**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY H. BRNUSAK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:02cv1763 |
| | ) | **Electronic Filing** |
| **ALLEGHENY LUDLUM** | ) | |
| **CORPORATION, GERALD MOSER,** | ) | |
| an individual, **THE UNITED** | ) | |
| **STEELWORKERS OF AMERICA,** | ) | |
| **ALLEGHENY TECHNOLOGIES** | ) | |
| **INC. PENSION PLAN,** | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **THERESA POWELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:02cv2092 |
| | ) | **Electronic Filing** |
| **ALLEGHENY LUDLUM** | ) | |
| **CORPORATION, GERALD MOSER,** | ) | |
| **an individual, THE UNITED** | ) | |
| **STEELWORKERS OF AMERICA,** | ) | |
| **ALLEGHENY TECHNOLOGIES** | ) | |
| **INC. PENSION PLAN,** | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **JOSEPH DANIELS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:02cv2093 |
| | ) | **Electronic Filing** |
| **ALLEGHENY LUDLUM** | ) | |
| **CORPORATION, GERALD MOSER,** | ) | |
| an individual, **THE UNITED** | ) | |
| **STEELWORKERS OF AMERICA,** | ) | |
| **ALLEGHENY TECHNOLOGIES** | ) | |
| **INC. PENSION PLAN,** | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ROBERT MIHALOVICH**,                      )
                                           )
        Plaintiff,                )
                                           )
      v.                                )     2:02cv2094
                                           )     **Electronic Filing**
**ALLEGHENY LUDLUM**                       )
**CORPORATION, GERALD MOSER**,             )
**an individual, THE UNITED**              )
**STEELWORKERS OF AMERICA**,               )
**ALLEGHENY TECHNOLOGIES**                 )
**INC. PENSION PLAN**,                     )
                                           )
        Defendants.               )

**MEMORANDUM OPINION**

July 6, 2006

## I.   INTRODUCTION

      Plaintiffs, Anthony H. Brnusak ("Brnusak"), Theresa Posell ("Powell"), Joseph Daniels ("Daniels"), and Robert Mihalovich ("Mihalovich")(collectively "Plaintiffs") initiated these related actions against Defendants, Allegheny Ludlum Corporation ("Allegheny Ludlum"or "Ludlum"), Gerald Moser ("Moser"), Allegheny Technologies Inc. Pension Plan (the "ATI Plan")(collectively the "Ludlum Defendants"), and the United Steelworkers of America (the "USWA" or the "Union"), alleging several claims which arise out of an agreement entered into between Allegheny Ludlum and the USWA, and are related to the recall of former Bethlehem Steel Corporation ("Bethlehem Steel") workers at the Bethlehem Steel's former Washington Flat Roll facility.

      In their Amended Complaint, Plaintiffs allege the following: (1) violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. By the Ludlum Defendants[1]; (2) breach of the collective bargaining agreement by the Ludlum Defendants; (3) claim in quasi contract against the Ludlum Defendants; (4) action in tort

---

     [1]    Per stipulation of the parties, the ERISA claim has been dismissed with prejudice.

against the Ludlum Defendants; and (5) breach of duty of fair representation against the Union[2]. Plaintiff Brnusak filed a motion for partial summary judgment against the Ludlum Defendants on Count II, breach of the collective bargaining agreement.  Both the Union and Ludlum Defendants have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.   STATEMENT OF THE CASE

In late 1999, Allegheny Ludlum began negotiations to purchase certain assets from Bethlehem Steel, including Bethlehem Steel's Flat Roll plant located in Washington, Pennsylvania (the "Flat Roll" or "Washington Flat Roll") .  Ludlum Exhibit A, Scarfutti[3] Deposition (hereinafter "Scarfutti Dep.") p. 26. As part of those negotiations, Allegheny Ludlum and the USWA worked to establish the terms by which former employees of the Bethlehem Steel Flat Roll plant, and members of the local USWA, could become employees of Allegheny Ludlum. Scarfutti Dep., pp. 26-30.  In or around November of 1999, the USWA and Allegheny Ludlum reached a tentative agreement (the "1999 Agreement") which was ratified by vote of Local 7139 of the USWA.  Ludlum Exhibit B;  Ludlum Exhibit C[4], Brnusak

---

[2]      Because Plaintiffs allege both breach of the collective bargaining agreement by their employer and a breach of the Union's duty of fair representation, the action is considered a "hybrid"" action under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.

[3]      John F. Scarfutti was the Director of Labor Relations for Allegheny Ludlum from September, 1991 to July, 2000.  He was General Manager of Labor Relations from July 2000 to July 2001.  Presently, Mr. Scarfutti is Vice President of Human Resources for Allegheny Ludlum.  Scarfutti Affidavit ¶1.

[4]      Ludlum filed separate briefs in each of the above-captioned cases. The deposition of each Plaintiff can be found at Ludlum's Exhibit C of each of the respective briefs.  The depositions will be cited as "Powell Dep.", "Daniels Dep." and "Mihalovich Dep."

Deposition (hereinafter "Brnusak Dep.") p. 23;  Ludlum Exhibit D, Armstrong[5] Deposition (hereinafter "Armstrong Dep.") p. 43.

The 1999 Agreement offered former Bethlehem Steel employees preferential hiring rights at two of Allegheny Ludlum's existing facilities, the plant in Houston, Pennsylvania (the "Houston Plant") and the Plate Mill facility in Washington, Pennsylvania (the "Plate Mill" or "Jessop Plate Mill"), as well as at the Washington Flat Roll.  Scarfutti Dep., p. 84; Plaintiff's Exhibit A, Affidavit of Paul Allen, Jr.[6] (hereinafter "Allen Aff.") ¶ 7;  Plaintiff's Exhibit C, Affidavit of J. Roy Murray[7] (hereinafter "Murray Aff.") ¶ 7.  The Union negotiators viewed the preferential hiring right at all three of Allegheny Ludlum's facilities as especially important to the membership as it would benefit members who did not have either the skills or the seniority to be hired at Flat Roll.  Murray Aff. ¶ 7; Allen Aff. ¶ 7.  Moreover, the language was so critical to the USWA that the parties agreed that the USWA would draft the "Hiring Procedure" portion of the 1999 Agreement.  Affidavit of John F. Scarfutti (hereinafter "Scarfutti Aff.") ¶ 10; *See also* Exhibit B to Scarfutti Aff. at ATI 00544.

The recall of former Bethlehem Steel employees was governed by the "Hiring Procedure," Attachment 2 to the 1999 Agreement, as set forth below in relevant part:

> 2)    [Allegeny Ludlum] contacts all former [Flat Roll]
>        employees to determine their interest in returning to work

---

[5]    During this time, Ralph Armstrong was president of the Amalgamated Steelworkers union, that is he chaired the unions at Houston, Jessop Plate Mill and Washington Flat Roll. Brnusak Dep. pp. 34-35.

[6]    Paul Allen, Jr. was an officer with Local 7139 and served on the Union's team that negotiated the 1999 sales agreement, the 1999 Agreement, with Allegheny Ludlum.  Allen Aff. ¶¶3 and 5.

[7]    J. Roy Murray ("Murray") was the Director of the Department of Collective Bargaining Services for the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union (AFL-CIO/CLC). Murray Aff. ¶2.  In the fall of 1999, Murray lead a bargaining team consisting of international experts and members of Local 7139 in negotiating a sales agreement with Allegheny Ludlum in anticipation of Ludlum's purchase of the Washington Flat Roll plant.  Murray Aff. ¶3.

under the conditions of this agreement.

- •    Limited time to decide

- •    One time only.  If they say "NO" to a hiring opportunity at the Washington Facility, they will be removed from all preferential hiring lists. Should a vacancy first occur at either the Houston or Jessop facilities, the employee may refuse either or both and still retain preferential hiring rights to Washington.

- •    [Allegheny Ludlum] will provide "non-respond" list to USWA after 2 weeks.  USWA has 1 week to follow-up.  Thereafter, "non-responders" lose all rights.

Ludlum Exhibit B.  The Union negotiating team distributed the 1999 Agreement to the Union membership at a ratification meeting and explained the Agreement to them. Allen Aff. ¶ 8. The negotiating team explained to the membership that, pursuant to the 1999 Agreement, if Allegheny Ludlum offered them a job at either the Houston plant or Jessop Plate Mill, the member could refuse the job and maintain preferential hiring rights at Flat Roll, but if the member accepted the position, the member would become a new hire with Allegheny Ludlum and would lose their preferential hiring rights at Flat Roll, as well as any credit for service at Flat Roll and its attendant seniority rights.  Allen Aff. ¶¶ 7 and 9; Murray Aff. ¶ 7.  The preferential hiring right was a "one time" offer only, and once a former Bethlehem Steel employee accepted any offer of employment from Allegheny Ludlum, he forfeited all preferential hiring rights.  *See* Scarfutti Aff. ¶ 8; Murray Aff. ¶ 7.  The Union membership ratified the 1999 Agreement.  Allen Aff. ¶ 9.

The 1999 Agreement provided only preferential hiring rights to the former Bethlehem employees.  Scarfutti Dep. pp. 81-83; Ludlum Exhibit E, Moser Deposition (hereinafter "Moser Dep.") p. 66-67.  Because the former Bethlehem Steel employees were not employees of Allegheny Ludlum until they accepted a job at one of Ludlum's three facilities, they were not covered by any collective bargaining agreement. Scarfutti Dep. p. 88.  Any rights beyond the preferential hiring rights, therefore, would be covered by the collective bargaining agreement in

force at the facility for which the former Bethlehem Steel employee accepted a position. Scarfutti Dep. p. 91.

If an employee was recalled to the Flat Roll plant, however, even though the employee was a new Allegheny Ludlum employee, such employee's seniority would include the time of service under Bethlehem Steel for purposes of vacation accrual, job bidding etc. Ludlum Exhibit B, Attachment 3; Moser Dep. p. 77.  None of the rights referenced in Attachment 3 of the 1999 Agreement, however, accrued until the employee accepted a position and began work at the Flat Roll. Scarfutti Dep. pp. 80-81; Moser Dep. pp. 69-71.  Once the employee began work at Flat Roll, such employee became covered by the collective bargaining agreement in place for the Flat Roll facility, the "Orange Book."  Scarfutti Dep. pp. 81-83; Moser Dep. pp. 69-79.

Pursuant to the 1999 Agreement, former Bethlehem employees, including Plaintiffs, were contacted and asked if they wanted to be considered for employment by Allegheny Ludlum.  Ludlum Exhibit B, Attachment 2; Moser Dep. p. 60.   Allegheny Ludlum compiled the responses and, together with the USWA, created a list of former Bethlehem employees (the "Recall List") to be called when new or additional hiring was needed at one of Ludlum's three facilities.  Plaintiffs responded affirmatively and were put on the Recall List.

<u>Anthony Brnusak</u>

In January 2000, Gerald Moser, Allegheny Ludlum's labor relations manager, contacted Brnusak and offered him a position at Ludlum's Houston Plant. Brnusak Dep. pp.64-65. Moser testified that he explained to everyone he contacted on the Recall List that if they accepted a job at the Houston Plant they would be removed from the Recall List, and lose all recall rights to Flat Roll.   Moser Dep. pp. 51-52.  Moreover, when asked, Moser explained that former Bethlehem Steel employees would forfeit all seniority rights, including pension, vacation and SUB pay rights, and would begin as a new hire if the employee accepted a position at either the Houston Plant or Plate Mill.  Armstrong Dep. pp. 69-70.  Brnusak

testified that he refused the position offered at the Houston plant because he was waiting for recall to Flat Roll.  Brnusak Dep. pp. 64-65; Ludlum Exhibit I, p. 4.  In accordance with the Agreement, Brnusak remained on the Recall List.

In April of 2000, Moser contacted Brnusak and offered him a position at the Plate Mill. Moser Dep. pp. 46-48; Brnusak Dep. pp. 70-71.  Moser testified that every one he contacted with regard to positions at the Plate Mill were told that if they accepted the position at the Plate Mill, they would lose all recall rights to Flat Roll.  Moser Dep. pp. 26-27, Armstrong Dep. pp. 65-71.  Brnusak was given approximately three (3) weeks to consider the offer.  Brnusak Dep. pp. 31, 54.  During this period, Brnusak had several conversations with Armstrong regarding his employment prospects at Flat Roll. Brnusak Dep. pp. 34-36.  After speaking with Armstrong, Brnusak was aware that he would be a new hire with Ludlum if he accepted the position at the Plate Mill. Brnusak Dep. p. 36.  In fact, Armstrong was also offered a position at the Plate Mill, and he specifically asked Moser how such a hire would affect his seniority, pension, vacations, etc. Armstrong Dep. pp. 65-72.  Moser answered every question and made the offerees aware that they would forfeit all pension and seniority rights if they accepted the position at the Plate Mill.  *Id.*; Moser Dep. pp. 48-49.

After considering all the factors, Brnusak accepted the position at the Plate Mill as a new hire of Allegheny Ludlum.  Brnusak Dep. p. 60. In accordance with the 1999 Agreement, he was removed from the Recall List and began training for his new position on May 1, 2000. Brnusak Dep. p. 54.  Shortly thereafter, Brnusak contends that Ludlum began recalling former Bethlehem employees to Flat Roll.  Brnusak Dep. pp. 87-90.  Though Brnusak was unhappy working at the Plate Mill and wanted to return to Flat Roll, he had exercised his preferential hiring rights and was no longer on the Recall List.  Ludlum Exhibit I.  For business reasons, Ludlum was forced to lay off employees in both the Plate Mill, including Plaintiff, and Flat Roll.  Ludlum Exhibit I; Moser Dep. p. 86.

Theresa Powell

In January 2000,  Moser contacted Powell and offered her a position at Ludlum's Houston Plant. Powell Dep. p. 61.  Moser testified that he explained to everyone he contacted on the Recall List that if they accepted a job at the Houston Plant they would be removed from the Recall List, and lose all recall rights to Flat Roll.   Moser Dep. pp. 51-52.  Moreover, when asked, Moser explained that former Bethlehem Steel employees would forfeit all seniority rights, including pension, vacation and SUB pay rights, and would begin as a new hire if the employee accepted a position at either the Houston Plant or Plate Mill.  Armstrong Dep. pp. 69-70.  Powell refused the position. Powell Dep. pp.61-62.   In accordance with the Agreement, Powell remained on the Recall List.

In April of 2000, Moser contacted Powell and offered her a position at the Plate Mill. Moser Dep. pp. 46-48; Powell Dep. pp. 66-67.  Moser testified that every one he contacted with regard to positions at the Plate Mill were told that if they accepted the position at the Plate Mill, they would lose all recall rights to Flat Roll.  Moser Dep. pp. 26-27, Armstrong Dep. pp. 65-71.  Powell was given more than three (3) weeks to consider the offer, and she testified that she conducted a thorough review of recall prospects at Flat Roll, as well as other employment options.  Powell Dep. pp. 72, 77-80.  During this period, Powell had several conversations with both Paul Allen and Ralph Armstrong regarding employment prospects at Flat Roll. Powell Dep. pp. 77-80.  Powell was aware that she would be a new hire with Ludlum if she accepted the position at the Plate Mill. Powell Dep. pp. 85-86. Moser could not offer Powell any guarantees regarding if and when Ludlum would hire additional employees at Flat Roll. Moser Dep. pp. 48-49. Moser, however, remained available to answer Powell's questions. Powell Dep. p. 75.     After careful consideration, Powell accepted the position at the Plate Mill as a new hire of Allegheny Ludlum.  Powell Dep. p. 76. In accordance with the 1999 Agreement, she was removed from the Recall List and began training for her new position on May 1, 2000. Powell Dep. p. 83. Shortly thereafter, Powell contends that Ludlum began recalling former

Bethlehem employees to Flat Roll.  Powell Dep. pp. 83.  Though she was unhappy working at the Plate Mill and wanted to return to Flat Roll, Powell had exercised her preferential hiring rights and was no longer on the Recall List.  Ludlum Exhibit I.  For business reasons, Ludlum was forced to lay off employees in both the Plate Mill, including Plaintiff, and Flat Roll. Ludlum Exhibit I; Moser Dep. p. 86.

Joseph Daniels

In January 2000, Gerald Moser contacted Daniels and offered him a position at Ludlum's Houston Plant. Daniels Dep. p.34.  Moser testified that he explained to everyone he contacted on the Recall List that if they accepted a job at the Houston Plant they would be removed from the Recall List, and lose all recall rights to Flat Roll. Moser Dep. pp. 51-52. Moreover, when asked, Moser explained that former Bethlehem Steel employees would forfeit all seniority rights, including pension, vacation and SUB pay rights, and would begin as a new hire if the employee accepted a position at either the Houston Plant or Plate Mill. Armstrong Dep. pp. 69-70.  Daniels refused the position offered at the Houston plant. Daniels Dep. p. 37; Ludlum Exhibit I, p. 4.  In accordance with the Agreement, Daniels remained on the Recall List.

In April of 2000, Moser contacted Daniels and offered him a position at the Plate Mill. Moser Dep. pp. 46-48; Daniels Dep. pp. 39-40.  Moser testified that every one he contacted with regard to positions at the Plate Mill were told that if they accepted the position at the Plate Mill, they would lose all recall rights to Flat Roll.  Moser Dep. pp. 26-27, Armstrong Dep. pp. 65-71.  Daniels was given a couple of weeks to consider the offer. Daniels Dep. p. 48.  During this period, Daniels investigated his chance of being recalled to Washington Flat Roll by discussing such prospects with Paul Allen and Moser. Daniels Dep. pp. 45-52.  Daniels was aware that he would be a new hire with Ludlum   Daniels Dep. p. 53.  Moser could not offer Powell any guarantees regarding if and when Ludlum would hire additional employees at Flat Roll. Moser Dep. pp. 48-49.

9

After considering his options, Daniels accepted the position at the Plate Mill as a new hire of Allegheny Ludlum. Daniels Dep. p. 45.  In accordance with the 1999 Agreement, he was removed from the Recall List and began training for his new position on May 1, 2000. Daniels Dep. pp. 30-31. Shortly thereafter, Daniels contends that Ludlum began recalling former Bethlehem employees to Flat Roll.  Daniels Dep. p. 54. Though he was unhappy working at the Plate Mill and wanted to return to Flat Roll, Daniels had exercised his preferential hiring rights and was no longer on the Recall List.  Ludlum Exhibit I.  For business reasons, Ludlum was forced to lay off employees in both the Plate Mill, including Plaintiff, and Flat Roll.  Ludlum Exhibit I; Moser Dep. p. 86.

<u>Robert Mihalovich</u>

In January 2000, Gerald Moser contacted Mihalovich and offered him a position at Ludlum's Houston Plant. Mihalovich Dep. pp.22-24. Moser testified that he explained to everyone he contacted on the Recall List that if they accepted a job at the Houston Plant they would be removed from the Recall List, and lose all recall rights to Flat Roll. Moser Dep. pp. 51-52.  Moreover, when asked, Moser explained that former Bethlehem Steel employees would forfeit all seniority rights, including pension, vacation and SUB pay rights, and would begin as a new hire if the employee accepted a position at either the Houston Plant or Plate Mill. Armstrong Dep. pp. 69-70.  Mihalovich refused the position offered at the Houston plant. Mihalovich Dep. p.24; Ludlum Exhibit I, p. 4.  In accordance with the Agreement, Mihalovich remained on the Recall List.

In April of 2000, Moser contacted Mihalovich and offered him a position at the Plate Mill. Moser Dep. pp. 46-48; Mihalovich Dep. pp. 25-26.  Moser testified that every one he contacted with regard to positions at the Plate Mill were told that if they accepted the position at the Plate Mill, they would lose all recall rights to Flat Roll.  Moser Dep. pp. 26-27, Armstrong Dep. pp. 65-71.  Mihalovich was given a couple of weeks to consider the offer. Mihalovich Dep. p. 28.  During this period, Daniels investigated the chance of being recalled to

Washington Flat Roll.  Mihalovich Dep. pp. 29-34.  Mihalovich was aware that he would be a new hire with Ludlum   Mihalovich Dep. p. 27.  Moser could not offer Mihalovich any guarantees regarding if and when Ludlum would hire additional employees at Flat Roll. Moser Dep. pp. 48-49.

After considering his options, Mihalovich accepted the position at the Plate Mill as a new hire of Allegheny Ludlum. Mihalovich Dep. p. 37.  In accordance with the 1999 Agreement, she was removed from the Recall List and began training for her new position on May 1, 2000.  Mihalovich Dep. p. 67. Shortly thereafter, Mihalovich  contends that Ludlum began recalling former Bethlehem employees to Flat Roll.  Mihalovich Dep. p. 69. Though he was unhappy working at the Plate Mill and wanted to return to Flat Roll, Mihalovich had exercised his preferential hiring rights and was no longer on the Recall List.  Ludlum Exhibit I. For business reasons, Ludlum was forced to lay off employees in both the Plate Mill, including Plaintiff, and Flat Roll.  Ludlum Exhibit I; Moser Dep. p. 86.

The Grievance

Plaintiffs requested that the USWA file a grievance on their behalf, and Armstrong, as president of the Amalgamated Local Union 7139, signed a grievance on behalf of former Bethlehem Steel employees who accepted positions at the Plate Mill (the "Grievance"). Brnusak Dep. p. 95; Powell Dep. p. 85; Daniels Dep. pp. 57-59; Mihalovich Dep. pp. 43-44; Ludlum Exhibit K; Plaintiff Exhibit L.  The USWA and Ludlum participated in Step 1 and Step 2 grievance hearings, with Moser acting as Ludlum's representative. Ludlum Exhibit K; Armstrong Dep. p. 52.  The Grievance was denied. Ludlum Exhibit K.  The USWA then appealed the Grievance to the third step.  Anderson Dep. p. 13.  After investigation by the parties, John Scarfutti issued a formal denial of the Grievance on April 17, 2001. Ludlum Exhibit N; Scarfutti Dep. pp. 56-57.

The USWA then agreed to appeal the Grievance to arbitration on behalf of the Plaintiffs. Plaintiff's Exhibit M.  On or about June 17, 2001, after a complete investigation, the

USWA decided to withdraw the Grievance. *Id.* Armstrong testified that such withdrawal was well within the discretion of the USWA. Armstrong Dep. pp. 47-49. Armstrong further admitted that the USWA fairly represented Plaintiffs in its decision to withdraw the Grievance. Armstrong Dep. pp. 44-49, 56-57. Moreover, Armstrong admitted that the USWA fulfilled its obligation by taking the Grievance through the third step in the process. Armstrong Dep. p. 54.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id.* The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a

summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV.    DISCUSSION**

    A.    <u>Breach of the USWA's Duty of Fair Representation</u>

The Third Circuit has expressly recognized a union's statutory duty of fair representation and summarized such duty as follows:

> It is a fundamental axiom of federal labor law that a union's status as the exclusive bargaining representative of an employee carries with it a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. . . . [A] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. In the context of a grievance proceeding, the rule is that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion. While the application of the "perfunctory" standard has proven difficult over time, we have recently made clear that whatever it may mean in other circumstances, mere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term "perfunctory." What is required is a showing of actual bad faith or arbitrary conduct.

*Riley v. Letter Carriers Local*, 668 F.2d 224, 228 (3d Cir. 1981) (internal citations omitted). Therefore, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *see also Air Line Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65, 77 (1991); *Riley v. Letter Carriers Local*, 668 F.2d 224, 228 (3d Cir. 1981).

Unions, though, are afforded wide discretion in handling grievance proceedings. *See Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970)(stating that "an employee . . .is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily, . . . even if it can later be demonstrated that the employee's claim was meritorious."). Moreover, an individual employee does not have an absolute right to have his grievance taken to arbitration. *Vaca v. Sipes*, 386 U.S. at 191; *see also Fajardo v. Foodtown Supermarkets*, 702 F. Supp. 502, 506 (D.N.J. 1988).  In *Vaca*, the Supreme Court stated:

> The union [has] discretion to supervise the grievance machinery . . . . If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.

*Vaca v. Sipes*, 386 U.S. at 191-192.

If a union arbitrarily ignores a meritorious grievance or "processes it in perfunctory fashion," the union may be found to have violated its implied statutory obligation. *Vaca v. Sipes*, 386 U.S. at 191. As set forth above, this does not mean that an employee has an absolute right to have his grievance taken to arbitration, even if the grievance has merit. *See id.*; *Findley v. Jones Motor Freight, Division Allegheny Corp.*, 639 F.2d 953, 958 (3d Cir. 1981); *see also Fajardo v. Foodtown Supermarkets*, 702 F. Supp. 502, 506 (D.N.J. 1988). It means that an employee will have a claim against his union for "conduct which is so acutely perfunctory that it fails to attain a basic level of acceptable performance by a collective bargaining unit." *Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685 (7th Cir. 1982). *See also Pagano v. Bell Atlantic-New Jersey*, 988 F. Supp. 841, 845 (D. N.J. 1997).

In this instance the USWA litigated the Grievance through three steps and then

requested arbitration of the matter.  At each step, the Grievance was denied.  Even Plaintiffs'
chief witness, Ralph Armstrong admits that Plaintiffs were fairly represented by the USWA,
and that the USWA acted within its discretion in withdrawing the Grievance prior to
arbitration.

Though Plaintiffs argue that the USWA breached its duty in withdrawing the Grievance
after "sid[ing] with the members by pursuing the grievance to an arbitration request. . ." and
"[l]ater, after winning these same rights for the majority through negotiation, the USWA
reversed and chose siding with the company against the members." Plaintiffs' Brief p. 18.  This
argument has no basis in fact or law.  Plaintiffs have failed to present any evidence that the
USWA's conduct in handling the Grievance was arbitrary, discriminatory or in bad faith, such
that a reasonable jury could conclude that the USWA breached its duty of fair representation.
*See Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970) (stating that it is
"essential to plaintiff's claim that there should have been proof of arbitrary or bad-faith conduct
on the part of the Union in processing his grievance").  Further, Plaintiffs point to no case law
that would allow this Court to find that such conduct by the USWA could be considered a
breach of its duty of fair representation.

Viewing all of the facts in the light most favorable to Plaintiffs, no reasonable finder of
fact could determine that the USWA failed "to serve the interests of [Plaintiffs] without
hostility or discrimination toward [them], to exercise [their] discretion with complete good
faith and honesty," and acted arbitrarily. *See Albright v. Virtue*, 320 F. Supp. 2d 276, 285 (M.D.
Pa. 2003) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44  (1998)).  Therefore,
summary judgment will be granted in favor of the USWA at Count V of Plaintiffs' complaint.

B.    Allegheny Ludlum's Alleged Breach of the 1999 Agreement

Plaintiff Brnusak seeks summary judgment on Count II of his complaint, alleging
breach of the collective bargaining agreement by Ludlum.  Ludlum argues that Plaintiff must
successfully establish the USWA's breach of the duty of fair representation before Ludlum can

be held liable by its employees for breaching the collective bargaining agreement.  Although
the contractual remedies under a collective bargaining agreement between the employer and
union ordinarily are exclusive, if the union has sole power under the contract to utilize the
higher stages of a grievance procedure and wrongfully refuses to process a grievance, the
employee may bring a hybrid action under Section 301. *See Vaca v. Sipes*, 386 U.S. at 184-185.
In *DelCostello v. Int'l. Brotherhood of Teamsters*, 462 U.S. 151 (1983), the Supreme Court
explained:

> Such a suit, as a formal matter, comprises two causes of action.
> The suit against the employer rests on § 301 [of the Labor
> Management Relations Act], since the employee is alleging a
> breach of the collective bargaining agreement. The suit against
> the union is one for breach of the union's duty of fair
> representation, which is implied under the scheme of the
> National Labor Relations Act. Yet the two claims are inextricably
> interdependent. To prevail against either the company or the
> Union, ... [Plaintiffs] must not only show that their discharge was
> contrary to the contract but must also carry the burden of
> demonstrating a breach of duty by the Union.

*DelCostello v. Int'l. Brotherhood of Teamsters*, 462 U.S. at 164-165 (quoting *United Parcel
Service, Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981)); *see also Chauffeurs, Teamsters and
Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *Vaca v. Sipes*, 386 U.S. at 186-187.
Moreover, the Third Circuit specifically stated that "[a] breach of the duty of fair
representation claim is a 'necessary condition precedent' to the [] claim [against the employer];
in hybrid suits where the employee sues both the employer and the union." *Albright v. Virtue*,
273 F.3d 564, 576 (3d Cir. 2001).

Pursuant to the Supreme Court's ruling in *DelCostello*, in order to prevail against the
Ludlum Defendants, Plaintiff must prove both that the USWA breached their duty of fair
representation and that Ludlum breached the collective bargaining agreement. Because this
Court has already determined that the USWA did not breach its duty of fair representation, it

need not determine whether Ludlum violated the collective bargaining agreement[8]. *See Albright v. Virtue*, 89 Fed. Appx. 769, 771 (3d Cir. 2004). Therefore, Plaintiff's request for summary judgment will be denied, and Ludlum's motion for summary judgment on the breach of contract claim will be granted.

    C.    <u>Plaintiffs' Claim in Quasi Contract Against the Ludlum Defendants</u>

In Count III of their complaint, Plaintiffs claim a breach of "quasi-contract" against the Ludlum Defendants contending that the 1999 Agreement was not properly ratified by the union membership. Plaintiffs clearly admit, however, that the collective bargaining agreement was ratified by the membership of Local 7139. *See* Plaintiffs' Memorandum in Opposition to USWA's Motion for Summary Judgment p. 14. Ratification of a collective bargaining agreement by the local union creates an enforceable contract. *Mack Trucks, Inc. v. International Union, United Auto.*, 856 F.2d 579, 592 (3d Cir. 1988). Specifically the Third Circuit stated, "[u]nion ratification is generally considered to be 'the last act necessary . . . to

---

    [8]    Notwithstanding Plaintiffs' failure to prove a breach of duty of fair representation by the Union, the clear evidence of record would not allow this Court to find a breach of the collective bargaining agreement. The intent of the parties to the 1999 Agreement is evident from the clear and unambiguous language of the contract. Because the preferential hiring rights at all three of Allegheny Ludlum's facilities were especially important to the membership, the parties agreed that the USWA would draft the "Hiring Procedure" portion of the 1999 Agreement. *See* Murray Aff. ¶ 7; Allen Aff. ¶ 7; Scarfutti Aff. ¶ 10; *See also* Exhibit B to Scarfutti Aff. at ATI 00544.

    Moreover, Plaintiffs' own witnesses are in agreement regarding the nature of the preferential hiring rights provided to the former Bethlehem Steel employees, including Plaintiffs. The negotiating team explained to the membership that, pursuant to the 1999 Agreement, if Allegheny Ludlum offered them a job at either the Houston plant or Jessop Plate Mill, the member could refuse the job and maintain preferential hiring rights at Flat Roll, but if the member accepted the position, the member would become a new hire with Allegheny Ludlum and would lose their preferential hiring rights at Flat Roll, as well as any credit for service at Flat Roll and its attendant seniority rights. Allen Aff. ¶¶ 7 and 9; Murray Aff. ¶ 7. The preferential hiring right was a "one time" offer only, and once a former Bethlehem Steel employee accepted any offer of employment from Allegheny Ludlum, he forfeited all preferential hiring rights. *See* Scarfutti Aff. ¶ 8; Murray Aff. ¶ 7. Therefore, Plaintiffs' interpretation of the 1999 Agreement is incorrect, and, as a matter of law, Ludlum did not breach the terms of the 1999 Agreement or the preferential hiring rights set forth therein.

create a meeting of the minds and an enforceable agreement.'" *Id.*, *quoting NLRB v. Deauville Hotel*, 751 F.2d 1562, 1569 n. 10 (11th Cir. 1985). *See also NLRB v. Southern Fla. Hotel*, 751 F.2d 1571, 1581 n. 14 (11th Cir. 1985) (parties created an enforceable contract upon rank-and-file ratification, even though document provided it would become valid upon execution).

Plaintiffs argue, however, that the USWA failed to inform the rank and file at the ratification meeting that the 1999 Agreement forfeited seniority and recall rights upon accepting a position at either the Houston Plant or the Jessop Plate Mill.  Therefore, Plaintiffs contend that there was no "meeting of the minds at contract formation beyond the plain meaning of the written text" of the collective bargaining agreement.  Again, Plaintiffs' argument has no basis in fact or law.

Both, Paul Allen, Jr., an officer with Local 7139 and member of the union negotiating team, and J. Roy Murray, Director of the Department of Collective Bargaining Services for the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union (AFL-CIO/CLC) and member of the union negotiating team, testified that the preferential hiring rights were clearly explained to the membership prior to ratification. *See* Allen Aff. ¶¶ 7 and 9; Murray Aff. ¶ 7.  Further, Plaintiffs have cited absolutely no authority to support their argument.  Plaintiffs certainly have failed to minimally support, let alone show a material issue of fact regarding a claim in quasi-contract.  Summary judgment will be granted on Count III of Plaintiffs' complaint.

    D.    <u>Action in Tort Against Ludlum Defendants</u>

At Count IV of their complaint, Plaintiffs allege a state law misrepresentation claim against Ludlum and Moser.  Plaintiffs' only allegations of misrepresentations are based on statements allegedly made by Moser regarding the number of employees Ludlium intended to recall to the Washington Flat Roll Plant.  Plaintiffs contend that they were led to believe that Ludlum would not be hiring enough employees from the Recall List to allow them to be

recalled to Flat Roll.  The alleged misrepresentation is related to Plaintiffs' preferential hiring rights established in the 1999 Agreement.  Ludlum argues that this state law tort claim is preempted by § 301 of the LMRA and must be dismissed.

It has been established that Congress intended § 301 of the LMRA to authorize federal courts to implement a uniform body of federal law controlling disputes regarding collective bargaining agreements. *See Beidleman v. Stroh Brewing Co.*, 182 F.3d 225, 231-232 (3d Cir. 1999). To ensure that contract terms have consistent meanings under state and federal law, "only the federal law fashioned by the courts under § 301 of the LMRA   governs the interpretation and application of collective bargaining agreements." *United Steelworkers of America, AFL-CIO- CLC v. Rawson*, 495 U.S. 362, 368 (1990).

Not every dispute between an employer and employee that relates to a collective bargaining agreement, however, is preempted under § 301 of the LMRA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). In *Allis-Chalmers*, the Supreme Court held that § 301 applies to tort claims invoking a breach of an employer's duty to the employee that was created by a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. at 213. If state law rights and obligations exist independently of the collective bargaining agreement, such rights are not preempted and cannot be waived or altered. *Id.*  Courts evaluate whether preemption is proper by determining whether the tort claim is "inextricably intertwined" with consideration of the terms of the collective bargaining agreement. *Id.* "When the meaning of the contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted clearly does not require the claim to be extinguished." *Beidleman v. Stroh Brewing Co.*, 182 F.3d at 232 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).

Guided by these principles, the Court must analyze Plaintiffs' claims of misrepresentation.  To state a claim for intentional misrepresentation, Plaintiffs must prove the following: (1) a representation; (2) which was material to the transaction; (3) made falsely, with

knowledge or recklessness as to whether it is true or false; (4) with the intent of misleading Plaintiffs into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999); *Kramer v. Dunn*, 749 A.2d 984, 991 (Pa. Super. 2000).

 Plaintiffs' misrepresentation claim certainly relates to their preferential hiring rights under the 1999 Agreement. The claim, however, does not evolve from a duty created by the collective bargaining agreement, nor does the misrepresentation claim require the interpretation of contract terms. Ludlum's, and/or Moser's, duty to accurately represent the facts as they existed at the time of Plaintiffs' recall is independent of any rights set forth in, or created by, the 1999 Agreement. Therefore, the Court finds that the misrepresentation claim is not preempted by § 301 of the LMRA.

 Plaintiffs, however, fail in their attempt to prove a claim of misrepresentation on the existing record. There is no evidence that Moser made any statements that were false with the intent of misleading the Plaintiffs. Plaintiffs admit that their union representatives gave them the same, or similar information regarding the hiring at Flat Roll. Moreover, each of the Plaintiffs testified that they made independent investigations regarding the possible recall to Flat Roll. Following such independent investigations, each Plaintiff made a decision based upon factors critical to their personal situations. Therefore, no reasonable finder of fact could find that Plaintiffs justifiably relied upon a false representation, to their detriment, that was made by either Ludlum or Moser. Plaintiffs state law tort claim based upon misrepresentation fails as a matter of law.

## V. CONCLUSION

 This Court finds that there are no material facts in dispute, and Plaintiffs are unable to show that: (1) the USWA breached its duty of fair representation; (2) Allegheny Ludlum breached the collective bargaining agreement; and (3) Ludlum or Moser misrepresented any

facts that induced Plaintiffs to accept offers of employment at Ludlum's Plate Mill.  Therefore,

Plaintiffs' motion for summary judgment must be denied.  The motions for summary judgment

filed on behalf of the USWA and the Ludlum Defendants shall be granted.   An appropriate

order will follow.


                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge

cc:     Richard P. Kimmins, Esq.
        Gerald J. Kross, Esq.
        304 Ross Street
        7th Floor
        Pittsburgh, PA 15219

        Walter A. Bunt, Jr., Esq.
        William T. Cullen, Esq.
        Dianna S. Karg, Esq.
        Kirkpatrick & Lockhart LLP
        535 Smithfield Street
        Pittsburgh, PA 15222

        Robert D. Clark, Esq.
        Richard J. Brean, Esq.
        United Steelworkers of America
        Five Gateway Center
        Pittsburgh, PA 15222